UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CIVIL DIVISION CASE NO.:

PATRICIA LOMBARDI,

        **Plaintiff,**

v.

CREDENCE RESOURCE
MANAGEMENT, LLC, and
AT&T, INC. d/b/a AT&T U-VERSE,

        **Defendants.**

_____/

## COMPLAINT FOR DAMAGES
## JURY DEMAND

1.    Plaintiff, PATRICIA LOMBARDI ("Plaintiff" or "Ms. Lombardi") by and through the undersigned counsel hereby brings this action against Defendants, and CREDENCE RESOURCE MANAGEMENT, LLC for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and further alleges violations of the Florida Consumer Collection Practices Act, §§559.55 – 559.785 (the "FCCPA") against AT&T, INC., d/b/a AT&T U-VERSE ("AT&T").

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3.    Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4.    Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

5. Plaintiff, who, as more fully described herein, is allegedly obligated to pay a debt and is therefore a consumer within the meaning of 15 U.S.C. § 1692a(3).

6. Plaintiff is a "consumer" as defined by Florida Statute §559.55(8).

7. Defendant, Credence Resource Management, LLC ("CRM") is a Texas corporation, authorized to do business in the state of Florida.

8. CRM uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts.

9. CRM is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Florida Statute §559.55(7).

10. These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications used to contact consumers within the state of Florida, or third parties who receive information regarding these consumers' accounts.

11. At all times material hereto, CRM regularly collects or attempts to collect debts for other parties and is a "debt collector" as defined under 15 U.S.C. 1692a(6).

12. AT&T is a holding company which provides telecommunications, media, and technology services throughout the United States, including Florida.

13. Among those services, AT&T uses the U-Verse brand to provide pay subscription TV services to its subscribers. As such AT&T is the owner of the U-Verse brand.

14. U-Verse is an AT&T brand of "triple-play"[1] telecommunications services, although the brand is now only used in reference to the internet protocol television (IPTV) service. Launched on June 26, 2006, U-Verse included broadband Internet (now AT&T

---

[1] A marketing term which refers to a bundled package of highspeed Internet, phone and cable/satellite TV. *See* https://web.archive.org/web/20081011223018/http://www.techomebuilder.com/article/6875.html (Last visited April 21, 2021).

Internet or AT&T Fiber), IP telephone (now AT&T Phone), and IPTV (U-verse TV) services in 48 states. *See* https://www.att.com/Common/merger/files/pdf/U-verse%20Timeline41907.pdf  (last visited April 21, 2021).

15. In July 2015, AT&T purchased DirecTV and subsequently announced plans to converge its existing U-Verse home internet and IPTV brands with DirecTV to create AT&T Entertainment. *See* https://www.dslreports.com/shownews/ATT-Plans-on-Killing-the-DirecTV-Name-Starting-in-January-135765  (last visited April 21, 2021).

16. On September 19, 2016, AT&T announced that U-Verse would no longer apply to its broadband and phone services. *See* https://www.dslreports.com/shownews/ATT-is-Getting-Rid-of-the-UVerse-Brand-137917 (last visited April 21, 2021). As such, U-Verse refers strictly to TV services provided by AT&T.

17. AT&T is authorized to do business in the state of Florida with numerous retail store locations offering U-Verse services. In addition to its retail locations AT&T markets the U-Verse brand online for customers to sign up for services.

18. AT&T's is a "person" as said term is defined under Florida Statute §1.01(3), and is subject to the provisions of Florida Statute §559.72 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined by Florida Statute §559.55(1).

19. The FCCPA applies to AT&T as a "debt collector" because such a term means "any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Florida Statute §559.55(7).

## LEGAL FRAMEWORK

### FCCPA

20. The FCCPA creates a private right of action under Fla. Stat. § 559.77.

21. The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." Fla. Stat. § 559.55(8).

22. The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

23. Consumer protection statutes are remedial in nature and should be liberally construed in favor of the public. *See Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

24. The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

25. The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. Fla. Stat. § 559.72. This language includes all unlawful attempts at collecting consumer debts by creditors and debt collectors alike. *See Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

26. Additionally, the FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

27. The FCCPA further provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

28. "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." Fla. Stat. §559.77(2).

### The FDCPA

29. The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt … 15 U.S.C. § 1692e.

30. A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

31. The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

32. The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).

33. The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due <u>or asserted to be owed or due another</u>." 15 U.S.C. § 1692a(6) (emphasis added).

34. "The FDCPA does not ordinarily require proof of intentional violation and, as a result, is described by some as a strict liability statute." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) (citing 15 U.S.C. § 1692k).

35. For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in *Exposition Press Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961)).

36. The principles underlying the FDCPA must be implemented for "the public— that vast multitude which includes the ignorant, the unthinking and the credulous." *Jeter*, 760 F.2d at 1172-73 (internal citations omitted). The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. at 1173 (internal citations omitted).

37. There is only one affirmative defense to liability for a violation of the FDCPA, the "bona fide error" defense. 15 U.S.C. §1692k(c).

38. To take advantage of this defense, the defendant must show by the preponderance of the evidence that its violation of the Act was not intentional, was a bona fide error, and occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11th Cir. 2009).

## FACTUAL ALLEGATIONS

39.     Ms. Lombardi previously had U-Verse service with AT&T until about February 2020 when she decided to cancel her services.

40.     Sometime in March 2020, Ms. Lombardi tried to return the equipment to a local AT&T store location, but she was unable to because of the COVID-19 pandemic which caused many stores to close for an indefinite period.

41.     Finally, Ms. Lombardi was able to return the equipment on November 28, 2020. *See* attached receipt as part of Composite Exhibit "A."

42.     At a time better known to AT&T and CRM, $375.75 in charges for unreturned equipment was reported as outstanding to certain credit reporting agencies (CRAs) commonly known as Equifax, Experian, Trans Union, and Innovis.

43.     On or about December 22, 2020, Plaintiff tried to resolve the issue with CRM directly by submitting an "Escalation Ticket" to communicate the substance of her dispute and ask for an investigation into the charges that still appeared on her credit files. The response appeared with the following image:

> Hello - You are receiving this email because the CPE Team has completed its investigation of your Escalation Ticket # **372369** for BAN: **145708615**
>
> Below is the current equipment status and explanation of our findings.
>
> **STATUS:** CLOSED-NOT-ADJUSTED
>
> **ROOT CAUSE:** Other
>
> **COMMENTS:** -- Equipment returned however non-returned equipment charges could not be located in CRM/BIBA. allow 1-2 BILL PERIODS.
>
> **Thank you**

44. Sometime in February 2021, Plaintiff was in the process of purchasing a home when the real estate professional she was working with notified her there was an account reported by CRM on behalf of AT&T that listed $375 as an unpaid charge-off.

45. Based upon information and belief, the charge-off was appearing as unpaid during the time Ms. Lombardi was in the process of buying her home, which lead to her paying a higher interest rate over the life of her loan.

46. Ms. Lombardi was fearful that she would lose the opportunity to purchase the home she found, so she went through with the home purchase.

47. On or about February 4, 2021, Ms. Lombardi received a "Dispute Investigation Response" claiming that the $375.75 balance was still outstanding. *See* "Dispute Investigation Response" attached as part of Composite Exhibit "A."

48. As a result, Ms. Lombardi sent written disputes to Experian, and Trans Union (hereinafter the "Credit Reporting Agencies" or "CRAs") where she described the events that led up to her account being referred to collections, the payments that she made on the account, and further provided relevant documents to support her request for an investigation by the CRAs (hereinafter "Initial Disputes").

49. A true and correct copy of the Initial Disputes is attached hereto as Composite Exhibit "B."

50. CRM received copies of the disputes sent directly to Equifax and Trans Union. *See* Exhibit "B."

51. Upon receiving the Initial Disputes, the CRAs relayed that correspondence to CRM.

52. The collections account has been removed from Ms. Lombardi's credit files, but prior to that she was damaged by AT&T and CRM's actions partially in the form of paying a higher interest rate over the life of her loan.

53. AT&T has been either the direct or indirect cause of such damage.

## COUNT I – VIOLATION OF §559.72(5)
## AGAINST AT&T FOR DISCLOSURE(S) TO CRM

54. Plaintiff incorporates by reference paragraphs 1, 3, 4, 6, 12 – 28, 39 -43, and 53 as if fully set forth herein.

55. At all times relevant to this action, AT&T is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

56. The FCCPA provides that no person shall "[d]isclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false." Fla. Stat. § 559.72(5).

57. AT&T knew or had reason to know that the information it disclosed to CRM regarding Plaintiff was false.

58. Plaintiff had paid off her old account with AT&T, yet Plaintiff was still referred to collections.

59. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

60. As a result of AT&T'S's conduct, Plaintiff has suffered damages including but not limited to time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, and damage to her reputation for credit worthiness.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor against AT&T for:

    a.    Actual and statutory damages pursuant to Fla. Stat. § 559.77;

    b.    Attorneys' fees, litigation expenses and costs of the instant suit; and

    c.    Such other or further relief as the Court deems proper.

## COUNT II - VIOLATION OF FLA. STAT. §559.72(9) AGAINST AT&T

61. Plaintiff incorporates by reference paragraphs 1, 3, 4, 6, 12 – 28, 39 -43, and 53 as if fully set forth herein.

62. At all times relevant to this action, AT&T'S is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

63. AT&T'S violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate, or asserting the existence of some other legal right when Defendant knew that right did not exist.

64. The February 4, 2021 letter sent to Plaintiff by CRM on behalf of AT&T was a demand for payment of a debt incurred for personal, family, or household purposes.

65. Specifically, CRM on behalf of AT&T sent a written demand for payment for an account that was paid off.

66. "Any person who fails to comply with any provision of s. 559.72 is liable for actual damages **and for additional statutory damages as the court may allow**, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with s.559.72, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional." Fla. Stat. 559.77(2) (emphasis added).

67. As a result of AT&T'S's conduct, Plaintiff suffered damages, including but not limited to emotional distress in the form of mental pain and shock, aggravation, frustration, and time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor against AT&T'S for:

a. Actual and statutory damages pursuant to Fla. Stat. § 559.77;

b. Attorneys' fees, litigation expenses and costs of the instant suit; and

c. Such other or further relief as the Court deems proper.

## COUNT III – VIOLATION OF 15 U.S.C. §1692e(2)(A) AGAINST CRM

68. Plaintiff incorporates by reference the allegations in paragraphs 1, 2, 5, 7 – 11, and 42 - 52 as if fully set forth herein.

69. Plaintiff is not legally obligated to pay the debt at issue because she returned the equipment to AT&T.

70. Therefore, CRM violated §1692e(2)(A) of the FDCPA by misrepresenting the character, legal status, and amount of the debt when they sent her the February 4, 2021 letter claiming the full balance was still owed.

71. Defendant's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.*; *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

72. The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

73. Defendant, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(A).

74. 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

75. As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to, time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against Defendant for:

   a. Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

   b. Attorneys' fees, litigation expenses and costs of the instant suit; and

   c. Such other or further relief as the Court deems proper.

### COUNT IV – VIOLATIONS OF 15 U.S.C. §1692e(8) AGAINST CRM

76. Plaintiff incorporates by reference the allegations in paragraphs 1, 2, 5, 7 – 11, and 42 - 52 as if fully set forth herein.

77. Plaintiff is not legally obligated to pay the debt at issue because she returned the equipment to AT&T.

78. A "debt collector" violates 15 U.S.C. §1692e(8) by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

79. CRM violated §1692e(8) when it communicated false credit information to the CRAs by stating a $375 balance was still due and owing even though Plaintiff had already returned the equipment in question.

80. The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

81. CRM's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.* at 1194 (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

82. CRM, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(8).

83. 15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

84. As a result of CRM's violations, Plaintiff has suffered damages including but not limited to, time spent addressing Defendant's illegal collection practices, misrepresentation of an amount to a third party, damage to her reputation for credit worthiness, an inaccurate credit

report, a higher interest rate on her home loan, and emotional distress associated with paying the higher rate because of CRM's actions or inactions.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against CRM for:

a.  Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b.  Attorneys' fees, litigation expenses and costs of the instant suit; and

c.  Such other or further relief as the Court deems proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

*Respectfully submitted,*

SHARMIN & SHARMIN, P.A.
830 North Federal Hwy
Lake Worth, FL 33460
Telephone: 561-655-3925
Direct: (954) 667 – 3096
Fax: 561-202-9041

/s/ Kevin Rajabalee
Kevin Rajabalee, Esq.
FBN: 119948
Email: kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
Email: eiman@sharminlaw.com
*Attorneys for Plaintiff*